**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**JARED GABRIEL FORRESTER,**

**Defendant.**

**Civil Action File No.**

**4:18-cv-283**

## ORDER GRANTING SEC'S MOTION FOR SUMMARY JUDGMENT, ENTERING FINAL JUDGMENT AND ORDERING DISGORGEMENT, PREJUDGMENT INTEREST AND A CIVIL PENALTY AGAINST DEFENDANT JARED GABRIEL FORRESTER

This matter is before the Court on the Plaintiff Securities and Exchange Commission's ("Commission") unopposed Motion for Summary Judgment and to Order Disgorgement, Prejudgment Interest and a Civil Penalty against Defendant Jared Gabriel Forrester. (Doc. 8.) Forrester has not responded to the Commission's Motion. For the reasons and the manner set forth below, the Court **GRANTS** the Commission's Motion. The Clerk of Court is **DIRECTED** to reopen this case for the limited purpose of entering this Order and the appropriate judgment and to then **CLOSE** the case. The Court shall retain jurisdiction to enforce this Order.[1]

Following the Commission's filing of a Complaint, (doc. 1), Defendant Forrester previously entered his general appearance, and has admitted the in personam jurisdiction of this

---

[1] This Order is based in large part on the Proposed Order submitted by the Commission concomitantly with its Motion, (doc. 8-2). The Court has reviewed the entirety of the record in this case, has researched the authorities cited within the Government's Motion, and finds the Order appropriate and warranted.

Court over him and the jurisdiction of this Court over the subject matter of the action. By order of this Court entered April 9, 2019 Forrester was permanently enjoined from further violations of the antifraud provisions of the federal securities laws and was barred from participating in the issuance, purchase, offer or sale of any security (excluding purchases or sales of securities for Forrester's own personal accounts). That order also directed that upon motion of the Commission, "that Defendant shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d)(3) of the Securities Exchange Act, 15 U.S.C. §78u(d)(3). The Court shall determine the amounts of disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from February 10, 2016, based upon the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. §6621(a)(2)." (Doc. 7, p. 7.)

The Order further states that "[I]n connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Order; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure." (Id.)

Defendant Forrester consented to the terms of the April 9, 2019 order of permanent injunction against him. The Commission's motion for summary judgment and to order

2

disgorgement, prejudgment interest and a civil penalty against Forrester is currently before this Court. All of the allegations of the Commission's complaint are deemed to be true for purposes of this motion for summary judgment. The Commission's motion is also based upon the Declaration of Stephen E. Donahue, Esq., the SEC attorney who supervised the agency's investigation of the matter, which sets forth the monetary benefit of Forrester's actions in the fraudulent scheme disseminating false information to the investing public for the purpose of selling securities to investors. To that end, and by his fraudulent conduct, Forrester's conduct gives rise to disgorgement of his unjust enrichment and a civil penalty in an amount set by the Court in this final judgment.

Based upon all of the information before this Court, the Court concludes that summary judgment on the issue of disgorgement, prejudgment interest thereon, and a civil penalty against defendant Forrester is appropriate.

**FACTUAL BACKGROUND**

From all of the evidence before the Court, it appears that no genuine issue exists as to the following material facts.

**I.  Forrester's Conduct**

The allegations of the Complaint regarding Forrester, which are accepted as true for purposes of this motion against Mr. Forrester, can be summarized as follows:

The Commission brought this action against Forrester for violations of the antifraud provisions of the federal securities laws.[2] Greenlee and Stewart operated their scheme through

---

[2] Two earlier filed companion cases to this matter are pending in this Court, including: SEC v. Tennstar Energy, Inc., David R. Greenlee, David A. Stewart. Jr. and Richard "Ric" P. Underwood, Civil Action 4:17-cv-151; and SEC v. Robert William Dorrance, 4:18-cv-209. The former of these companion cases has been stayed upon the motion of the U.S. Attorney for the Southern District of Georgia pending resolution of related criminal proceedings against those defendants. The latter companion case recently resulted in a final judgment being entered against Defendant Dorrance.

SEG for the limited partnerships and Tennstar for the joint ventures. Each company was purportedly run by an individual experienced in the oil industry. (SMF ¶7). In soliciting investors, Greenlee, Stewart and their sales teams represented that the limited partnerships and joint ventures would use investor funds to acquire "working interests" in various oil wells, employ techniques, such as fracking, to develop and recover oil from the wells, and sell the oil to earn investors returns—in the form of revenue interests—ranging from 15 to 55 percent or more per year, which they said would last for decades. (SMF ¶8). In fact, while Greenlee and Stewart used some investor money at several wells to create an appearance of activity to dupe investors who wanted to see the wells in production, they used nearly two-thirds of the $15 million raised for their own benefit or to pay the costs of conducting the fraud, such as radio and internet advertising. Given their criminal backgrounds, Greenlee and Stewart used fake names when soliciting investors to conceal their involvement in the scheme. (SMF ¶9). Defendant Forrester was the figurehead installed by Greenlee and Stewart to run Tennstar. Forrester was portrayed to investors as running Tennstar when, in reality, that entity was controlled by Greenlee and Stewart. Forrester incorporated the company at their request using $18,000 they provided, listed himself as Tennstar's registered agent, and opened the entity's offices in Tennessee and South Florida to house its boiler-room sales staff. (SMF ¶10).

When investors ultimately provided their money to Tennstar, Forrester followed instructions from Greenlee and Stewart regarding how much to pay to the sales team, how much to spend on advertising, and how much to funnel to bank accounts controlled by Greenlee and Stewart for personal misappropriation—none of which was disclosed to investors as anticipated use of their funds. (SMF ¶11). In addition to allowing himself to be portrayed falsely as running the company, Forrester was also active in the offer and sale of investments in Tennstar's

4

offerings. In fact, he was the Tennstar employee who typically was listed on shipping labels as the sender of offering materials via mail or common carrier to investors, knowing that those materials included a fake biography of himself. For example, in July 2015, Forrester sent by common carrier a package of Tennstar offering materials to a Southern District of Georgia resident in Savannah, Georgia. The materials included the false biography of Forrester. The Southern District of Georgia resident ultimately invested $28,000 in a Tennstar offering, but never received any profits or distributions from the investment. (SMF ¶12).

That fake biography claimed that Forrester, who was 29 years old when his role in the Tennstar fraud began, "had a multitude of roles within the petroleum industry over the years" and had been "part of the 30+ years of [oil] field projects that his family ha[d] developed." The biography, written chiefly by Stewart and approved by Forrester, then asserted that Forrester's experience had given him "ground-level field development expertise in the oil patch" and "an immense knowledgebase in oil and gas development and how to effectively maximize profits." (SMF ¶13). None of this was true since, prior to his figurehead role at Tennstar, Forrester had never worked in any legitimate oil drilling or production effort, nor had Forrester's family members ever been involved in "30+ years of [oil] field projects." Forrester knew Greenlee and Stewart were using fake names when soliciting investors, and he touted his own fake industry experience in verbal solicitations of investors. (SMF ¶14).

For instance, in an audio file created by Tennstar in what appears to have been an effort to coach and train its salesmen, Forrester was recorded on a telephone call soliciting a prospective investor to purchase an interest in a Tennstar joint venture. During the call, Forrester told the prospective investor that Forrester had been in the oil business almost all of his life, claiming at one point during the call that he had worked in the industry since he was "in

5

diapers." (SMF ¶15). Additionally, when soliciting investors, Forrester used call scripts provided by Greenlee and Stewart for the boiler-room sales teams, claiming falsely that investments in Tennstar's joint ventures were low risk and profitable. Forrester knew such claims were false because, among other things, as head of Tennstar he signed and distributed investor distribution checks and knew most investors were receiving little, if any, return on their invested funds. (SMF ¶16).

Specifically, in July 2014, Forrester solicited and sold a Tennstar joint interest investment to a male investor, then a 50 year-old Florida resident. The Florida investor initially had contacted SEG—the other fraudulent entity controlled by Greenlee and Stewart—after hearing an SEG radio advertisement about oil investment opportunities. In response to the Florida investor's inquiry, Forrester called the Florida investor and, after asking about the Florida investor's income, told him that his earnings were insufficient to invest in an SEG opportunity, but noted that the Florida investor could invest in a Tennstar joint venture instead. In soliciting the Florida investor, Forrester falsely told the man that SEG and BGR were unrelated and that Forrester had "worked his way up through the oil fields" and had been in the oil industry "his whole adult life." (SMF ¶17). When the Florida investor asked Forrester if the Tennstar offering was—in his words—"on the up and up," Forrester responded by telling him, as the Florida investor recalled: "I'm a man of God. I love my family and my faith is most important to me. And I'm not lying to you." After hearing this, the Florida investor told Forrester to send him further information on the offering, which Forrester did by sending him offering materials by common carrier that contained Forrester's fake biography. (SMF ¶18).

After receiving these materials, the Florida investor had another call with Forrester. During this call, the Florida investor asked Forrester about the risks of a Tennstar investment.

Forrester responded by telling the Florida investor not to worry about risk because Forrester's prior experience in the oil industry was alleviating that risk. Forrester further told the Florida investor that he could receive a 30 percent return on his investment, adding, as the Florida investor recalled, that the "oil flow is expected to last for decades, if not longer." (SMF ¶19). Based on Forrester's representations about the investment and his supposed industry experience, the Florida investor invested a total of $80,000 into two separate Tennstar joint venture offerings—an amount that the Florida investor described to Forrester as being almost all of his life savings. The Florida investor, in making his investment decision, believed that Forrester's purported experience would make the joint ventures successful. (SMF ¶20).

Subsequently, in February 2015, Forrester told the Florida investor in letters that he signed as Tennstar's President and CEO that the oil wells in which the Florida investor had invested had turned out to be dry. Forrester assured the Florida investor that his investment would be moved to a different Tennstar joint venture but that no new paperwork was necessary. Forrester further assured the Florida investor that the new joint venture was a "sure thing." The Florida investor eventually received a few small distribution checks from Tennstar, totaling no more than $550. He never received his promised return on his investment or any refund of his invested amount. (SMF ¶21).

## II.     Disgorgement and Prejudgment Interest Calculations

Pursuant to the calculation of Stephen E. Donahue as set forth in his sworn declaration, defendant Forrester should be called upon to disgorge the full amount of ill-gotten gains he derived in this scenario, in the amount of $235,000. The amount of disgorgement sought is reasonable in light of Forrester's sworn testimony as to his admitted earnings from the fraud. Relevant portions of Forrester's sworn testimony are exhibits to the Donahue Declaration.

Prejudgment interest has been calculated on the amount of $235,000 from February 10, 2016, through March 31, 2019, at the interest rates used by the Internal Revenue Service, for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 3% annually to a high of 6% annually). During that period, the total prejudgment interest on $235,000 totals $32,396.60. Disgorgement and interest owed by Forrester totals $267,396.60.

## DISGORGEMENT, PREJUDGMENT INTERST AND CIVIL PENALTY

Based on the foregoing and the authorities cited within the Commission's Motion, the Court hereby **ORDERS, ADJUDGES AND DECREES** that Defendant Forrester is liable for disgorgement in the amount of $235,000, representing his unlawful gains as a result of the fraudulent conduct set forth in the Complaint, together with prejudgment interest thereon in the amount of $32,396.60. Defendant shall satisfy this obligation by paying $267,396.60 to the Securities and Exchange Commission within 30 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

    Enterprise Services Centeras
    Accounts Receivable Branch
    6500 South MacArthur Boulevard
    Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Jared Forrester as the defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326. By making this payment, Defendant Forrester relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

The Court further **ORDERS, ADJUDGES, AND DECREES** that Defendant Forrester shall pay a civil penalty in the amount of **$150,000** pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Defendant Forrester shall make this payment within thirty (30) days after entry of this Final Judgment. The Court orders Forrester to pay a penalty within the "third tier" as prescribed by Section 77t(d)(2)(C) and Section 78u(d)(3)(B)(iii) as Forrester's violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Defendant Forrester may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank

cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Jared Forrester as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326. By making this payment, Defendant Forrester relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Defendant Forrester shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

The Court **FURTHER ORDERS, ADJUDGES, AND DECREES** that, the terms of the Final Judgment include the directives in this order, and further include the terms of the *Permanent Injunction and Other Relief As to Defendant Jared Gabriel Forrester* signed by this Court on April 9, 2019. There being no just reason for delay, the Clerk is directed to enter this final judgment against Defendant Forrester forthwith.

This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment

**SO ORDERED**, this 27th day of March, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA